**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**CATHY L. WALDOR**<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>ROOM 4040<br>NEWARK, NJ 07101<br>973-776-7862 |

*ALL COUNSEL VIA CM/ECF*

**LETTER OPINION**

    Re:       Fitchburg Mutual Ins. Co., et al. v. Palmiro Ferraro, Inc., et al.
                Civil Action No. 2:14-cv-0063 (KSH)(CLW)

Dear Counsel:

      This matter is before the Court upon the application of Fitchburg Mutual Insurance Company and Valley Forge Insurance Company (together "Plaintiffs") for an Order permitting them to file a Second Amended Complaint that asserts a cause of action against Ferraro's Restaurant Group ("Ferraro's") sounding in vicarious liability for the alleged negligent acts by its independent contractor, Architect Robert Algarin, in the design and expansion of the restaurant. Ferraro's opposes this motion arguing that well settled New Jersey law renders the proposed cause of action futile. The Court decides this application without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons that follow, the Court will GRANT Plaintiffs' motion.

Background

      This diversity subrogation action arises out of Fitchburg Mutual Insurance Company and Valley Forge Insurance Company's claims for sums paid to its respective insureds, Anthology, Inc. and Bavint Corporation ("Bavint"), as a result of property damage and loss of business caused by a fire originating at Ferraro's Restaurant in Westfield, New Jersey on May 5, 2011. See Am. Compl., ECF No. 17, at ¶¶ 3, 6, 31. Ferraro's restaurant was configured so that it occupied the first floor space of three different adjoining buildings, denoted as buildings one, two, and three. The Complaint alleges on or about July 15, 2007, Palmiro Ferraro, Inc. ("PFI"), leased additional space in building three from Bavint, owner of building three, which had previously been occupied by an electric supply store, for the purpose of expanding and enlarging Ferraro's Restaurant. Id. at ¶ 21. Prior to that date, PFI, the owner of buildings one and two, had subleased the first floor of both buildings to Ferraro's and an interior passageway had been constructed to connect the buildings and restaurant. Id. at ¶¶ 11–12, 14. PFI also possessed lease rights to numbers 18–21 in building three and had previously subleased that space to Ferraro's which had likewise expanded the restaurant with a similar interior passageway

connecting buildings two and three. Id. at ¶ 14–17. After July 15, 2007, once PFI and Ferraro's obtained lease rights to numbers 22–24 in building three and the electric supply store vacated the space, Ferraro's sought to renovate so as to expand and enlarge the restaurant even more. Id. at ¶ 20, 23. In order to accomplish this renovation, Ferraro's contracted with Architect Robert Algarin ("Algarin"). See Ferraro's Ans., Cross-Claims, and Third Party Compl., ECF No. 23, at pp. 11–12.  Upon completion, the renovation would bring the size of the restaurant to approximately 11,000 square feet, and importantly, according to Plaintiffs, changed the fire hazard use classification of numbers 22–24 of building three from an M rating to an A-2 classification. See Am. Compl., at ¶¶ 19–27, 29. Plaintiffs' allege this change in use required Ferraro's to bring the entire 11,000 square foot restaurant into compliance with the New Jersey Rehabilitation Code which requires any restaurant in excess of 5,000 square feet to install a sprinkler system in the entire area of the restaurant and install fire doors or other fire separations. Id. at 28–30; see N.J.A.C. § 5:23-6.13A.[1] Plaintiffs argue that because Ferraro's did not install the appropriate sprinkler system or fire barriers, on or about May 5, 2011, the fire that originated in building two grew unabated destroying building two and causing significant property damage to buildings one and three. Am. Compl., at ¶¶ 31, 32.

Arguments

Plaintiffs request leave to file a Second Amended Complaint to assert a cause of action against Ferraro's sounding in vicarious liability for the alleged negligent acts by its independent contractor, Algarin, in the design and expansion of the restaurant. Proposed Second Am. Compl. "Proposed Amended Complaint", ECF No. 29-1, at ¶¶ 61–67. Plaintiffs base their request on the Restatement (Second) of Torts, Section 422 ("Section 422"), which creates a cause of action

---

[1] The New Jersey Rehabilitation Subcode fire hazard classification divides the A-2 classification into two categories, Nightclubs and those structures "other than Nightclubs." The Uniform Construction Code—within which the Rehabilitation Subcode is found—defines Nightclubs as: "All buildings and places of public assembly designed for use as dance halls, *eating and/or drinking establishments*, and similar occupancies, *in which the established maximum permitted occupant load exceeds the number of seats provided by more than 30 percent or which affords less than 12 square feet net area per occupant*." N.J.A.C. § 5.23-3.14 (emphasis added). A cursory review of the code reveals that the 5,000 square foot threshold for sprinkler systems appearing in N.J.A.C. § 5:23-6.13A(a) applies to A-2 Nightclubs. Structures "other than Nightclubs" follow the parameters of N.J.A.C. § 5:23-6.14A(a) which indicates a threshold of 12,000 square feet for the sprinkler system requirements to apply. It is unclear to this Court, but indeed unnecessary for the Court to determine at this juncture, what the renovated restaurants obligations were under the code, and whether they were classified as an A-2 Nightclub or A-2 "other than Nightclub." The Court also notes that the obligation to install a sprinkler system can arise under a different subsection of these codes, such as the occupant load, so the obligation to install sprinklers and other fire protection devices is not entirely dependent upon this one question. See e.g., N.J.A.C. § 5:23-6.14A(a)(2)–(3); see also N.J.S.A. § 52:27D-198(b) (New Jersey's Uniform Fire Safety Act requires the administrative adoption of regulations that would require the use of fire detection and suppression systems).

against the employer of a carefully selected independent contractor, arguing that Ferraro's cannot escape liability for the alleged negligence in failing to install sprinklers and fire doors by arguing that fault for such an omission rests on their independent contractor Algarin. Id. In support of this position, the Plaintiffs rely on Justice Schreiber's concurrence in part and dissent in part in Brown v. Racquet Club of Bricktown wherein he stated that a possessor of land could not escape liability for a contractor's negligence on the theory that a defect was not reasonably discoverable. 95 N.J. 280, 299 (1984).

Ferraro's opposes the request, arguing that well-settled New Jersey law has established that such a cause of action does not exist in this jurisdiction, and indeed, no New Jersey court has ever expressly adopted Section 422 thus rendering the Proposed Second Amended Complaint futile. Ferraro's Br. in Opp. ("Opposition"), ECF No. 28 at 5. Ferraro's argues it is long-settled in New Jersey that "ordinarily one who engages a contractor, who conducts an independent business by means of his own employees, is not liable for the wrongful conduct of that contractor in the performance of its duties and services." Opposition, at 7 (citing Bharle v. Exxon Corp., 145 N.J. 156 (1996)). Thus, Ferraro's concludes that any claim of liability pursuant to Section 422 fails as a matter of law, and the leave to amend should be denied. Id. at 9.

Plaintiffs' reply[2] disputes Ferraro's belief that New Jersey law is inconsistent with the Section 422 arguing that Ferraro's is vicariously liable because of its status as a possessor of land, which imposes unto them a non-delegable duty to abide by the requirements of the fire and building codes. See Pls.' Reply ("Reply"), ECF No. 30, at 3. This status, Plaintiffs argue, justifies holding Ferraro's liable for the negligence of their subcontractor despite whichever legal relationship exists between Ferraro's and Algarin. Id. Further, Plaintiffs argue even if New Jersey has not yet adopted the cause of action embodied in Section 422, the New Jersey Supreme Court would adopt it if given the opportunity because prior case law and public policy lends itself to the conclusion that New Jersey should hold property owners liable for the negligence of their subcontractors in circumstances such as those at issue here. Id. at 9 (citing Mayer v. Fairlawn Jewish Center, 38 N.J. 549 (1962), and Majestic Realty Assoc. Inc. v. Toti Contracting Co., 30 N.J. 425 (1959)).

Discussion

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Granting or denying leave to amend a pleading is within the Court's discretion. Foman v. Davis, 371 U.S. 178, 182 (1968). The Court may deny leave to amend a

---

[2] The Court notes that Plaintiffs' reply exceeds the page limitations of L. Civ. R. 7.2(d) which sets a page limit of 11.25 pages when a proportional 12-point font is used. However, the Court has reviewed the submission in its entirety, and in deciding this application has considered those pages in excess of the limit.

pleading if it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 18. Here, the primary opposition to the amendment is the alleged futility of the proposed cause of action.

With respect to futility, leave to amend may be denied if "the complaint, as amended, would fail to state a claim upon which relief could be granted." Hayden v. Westfield Ins. Co., 586 Fed. Appx. 835, 841 (3d Cir. 2014) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). Thus, the standard for reviewing a proposed amendment for futility is the same standard of review as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See In re Burlington Coat Factory, 114 F.3d at 1434; Parson v. Home Depot USA, Inc., 2013 U.S. Dist. LEXIS 175185, at *4–5 (D.N.J. Dec. 13, 2013). When faced with a motion to dismiss for failure to state a claim, the court conducts a two-step analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual elements are separated from the legal elements of the claim. Fowler, 578 F.3d at 210–11. The court must accept the factual elements alleged in the well-pleaded complaint as true, but may disregard any legal conclusions. Id. Second, the court must determine if the facts alleged are sufficient to show a "plausible claim for relief." Fowler, 578 F.3d at 210 (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). A plausible claim is one which "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler, 578 F.3d at 210–11 (quoting Iqbal, 556 U.S. at 678). "Ultimately, this two-part analysis is 'context-specific' and requires the court to draw on 'its judicial experience and common sense' to determine if the facts pled in the complaint have 'nudged [plaintiff's] claims' over the line from '[merely] conceivable or [possible] to plausible.'" Hobson v. St. Luke's Hospital and Health Network, 735 F. Supp. 2d 206, 211 (E.D. Pa. 2010) (quoting Fowler, 578 F.3d at 211–12).

This application presents a series of interesting questions that can be distilled to the following: whether a property owner can be liable for property damage to adjoining properties caused by a fire that originated within its premises and which, but for violations of building and fire codes could have been abated, by arguing that the builders and architects who negligently omitted the fire suppression devices were independent contractors?

In viewing the Proposed Second Amended Complaint within the Fowler framework, the factual basis for the claim is, to summarize, that during the course of its expansion Ferraro's did not install a fire suppression system, or have fire barriers installed between buildings one and two or two and three, and as a result of the fire, Plaintiffs' subrogees sustained property damage. See Proposed Second Am. Compl., ¶¶ 23, 31, 32, 34. The added complication here is the assertion by Ferraro's that Algarin was retained as an independent contractor, and in that role he appears to have omitted the fire suppression devices from his plans. See Ferraro's Ans., Cross-Claims, and Third Party Compl., ECF No. 23, at pp. 11–12.

Legally, the claim sounds in negligence. The test of negligence is whether the reasonably prudent person at the time and place should recognize and foresee an unusual risk or likelihood of harm or danger to others. See Scully v. Fitzgerald, 179 N.J. 114, 126 (2004). In cases like the one currently before the Court, the standard of care applied to a defendant is shaped by its status as the proprietor of a commercial premises and its relationship to plaintiffs at the time of the accident. See Brown, 95 N.J. at 290. And there have been multiple cases in which the New Jersey Supreme Court has emphasized that a property owner can be liable to adjoining property owners in certain instances where the property was kept in an unsafe and dangerous condition and the landowner did not take reasonable precautions to prevent the start or spread of the fire. See e.g., B.W. King Inc., v. Town of West New York, 49 N.J. 318 (1967); Menth v. Breeze Corp., 4 N.J. 428 (1950).

But, principals are generally not liable for the negligence of their independent contractors. Bharle v. Exxon Corp., 145 N.J. at 156; Basil v. Wolf, 193 N.J. 38, 47 (2007). As Ferraro's notes in its memorandum in opposition there are three recognized exceptions to the general rule that a principal is not liable for the wrongful conduct of its independent contractors. Opposition at 8 (citing Majestic Realty Associates, 30 N.J. at 436 (1959) The three exceptions are: (1) when the principal retains control over the manner and means of doing the work the contractor provided; (2) when the principal has engaged an incompetent contractor, or (3) where the services provided by the contractor are a nuisance per se. Id. Those exceptions would require a fact-based inquiry into the circumstances of the principal and independent contractor's relationship. Section 422 envisions another scenario in which a principal is liable for the torts of the independent contractor, that in which:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure (a) while the possessor has retained possession of the land during the progress of the work, or (b) after he has resumed possession of the land upon its completion.

Restatement (2d) of Torts § 422. Insofar as Section 422 appears to impose strict liability upon the principal for all acts of the independent contractor, the Court would not support such an interpretation, and indeed such a construction would go against established law. See Majestic Realty, 30 N.J. at 438 (stating that even where a duty is absolute, the liability is not).

However, another way of interpreting Section 422 would be to mirror the recognized and accepted principles of non-delegable duties. The purpose for imposing a non-delegable duty on the principal is that the duty is of extraordinary importance to the public. Id. at 439 (noting duty may be non-delegable where its social value "to the community is so significant that the law

- 5 -

cannot allow it to be transferred to another"). There have been multiple cases finding that a non-delegable duty was owed to an adjoining landowner. See e.g., Id. at 436 (finding landowner had non-delegable duty to exercise reasonable care to members of the public or adjoining property owners in razing building); Great Northern Ins. Co. v. Leontarakis, 387 N.J. Super. 583, 592 (App. Div. 2006) (finding adjoining landowner has non-delegable duty to maintain lateral support for the structure). Thus, if the Court were to determine that compliance with building safety and fire codes were a non-delegable duty, then Ferraro's would have the same liability for Algarin's omission as if Ferraro's had done the renovation itself. This interpretation would reconcile Section 422 with existing law.

Although the parties disagree on the weight this Court should afford Justice Schreiber's opinion in Brown, his argument is a compelling one. The Court need only examine an analogous situation. Suppose instead of damaging an adjoining property, the injury caused by this fire was a bodily injury to a patron of Ferraro's. The argument in that case would be that the restaurant had a non-delegable duty to exercise reasonable care for the safety of persons using the premises at its invitation, an ongoing and continuous responsibility. See e.g., Mayer, 38 N.J. at 555. This is because the "proprietor of premises, to which the public is invited for business purposes of the proprietor, owes a duty to exercise reasonable care to see that one who enters his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation." Brown, 95 N.J. at 290 (quoting Brody v. Albert Lifson & Sons, Inc., 17 N.J. 383, 389 (1955)). And in that case "it would be immaterial whether the construction work was being performed by [the business's] own employees or by an independent contractor." See Mayer, 38 N.J. at 555. Assuming, *arguendo*, the failure to install fire suppression devices created a dangerous situation or was a non-delegable duty, the difference here would be that the status of the injured party vis-à-vis the restaurant is an adjoining property rather than an invitee. The analysis in that scenario shifts away from questions of who constructed the premises to questions of knowledge or notice of defects. See Brown, 95 N.J. at 290 (stating that "a proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice"). Indeed for purposes of this motion it is therefore clear to this Court that the mere assertion that an independent contractor performed the renovation work for Ferraro's is not sufficient to render the proposed claim futile.

The Court clarifies though, in some ways, the proposed claim may be redundant insofar as it asserts a basis of liability for Ferraro's own negligence in failing to make itself aware of prevailing regulations related to renovating the space. Indeed, the claim may be direct rather than vicarious. As the Court has stated, it does not intend to create a new exception to the general rule that a principal is generally not liable for the negligence of its independent contractor. Nor does the Court adopt Section 422. Rather, the Court has determined that the proposed claim may be asserted insofar as it is consistent with existing law. And since the proposed claim seeks to impose liability on the principal for the negligence of the independent contractor, Plaintiffs must do so through recognized means; establishing one of the three

exceptions recognized in Majestic Realty, supra at 5, or establishing that a non-delegable duty existed such that the duty could not "be put aside and immunity gained through the agency of an independent contract." Majestic Realty, 30 N.J. at 438.

Conclusion

The Court concludes that Plaintiffs' proposed pleading is not futile, that a plausible cause of action exists to hold Ferraro's liable for the omissions of its independent contractor that warrants further inquiry.  Therefore For the foregoing reasons; and for other good cause shown,

IT IS on this 26th day of August, 2015,

ORDERED that the application seeking leave to file the Proposed Second Amended Complaint [ECF No. 26] is GRANTED; and it is further

ORDERED that Plaintiffs are to file the Proposed Second Amended Complaint within ten (10) days of the date hereof; and it is further

ORDERED that the Clerk shall terminate docket entry number 26.

*/s/Cathy L. Waldor*
**HON. CATHY L. WALDOR**
**United States Magistrate Judge**